UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULY JUSTINE SHELBY,<br><br>              Plaintiff,<br><br>    -against-<br><br>UNITED STATES OF AMERICA,<br><br>              Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff JULY JUSTINE SHELBY, by her attorneys, Cohen&Green PLLC, complaining of the Defendant, alleges, upon information and belief and personal knowledge:

### NATURE OF THE CASE

1. Plaintiff brings this action for damages under the Federal Tort Claims Act ("FTCA") for personal injury and pain and suffering she suffered while detained by the Bureau of Prisons ("BOP") in the Manhattan Detention Center ("MDC"), in Brooklyn, New York, FIC Marianna, FIC Otisville.

### JURISDICTION AND VENUE

2. Jurisdiction over this action is pursuant to 42 U.S.C. § 1331, 28 U.S.C. § 1346(b), and 28 U.S.C. §§ 2761–80.

3. Venue is proper under 28 U.S.C. § 1402(b) in the District Court for the Southern District of New York, because many of the acts and omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

4. Prior to retaining undersigned counsel, Plaintiff filed a Form 95 regarding the instant claim, which was received by the Bureau of Prison's Northeast Regional Office on or around June 20, 2024.

1

5. On February 18, 2025, Plaintiff received a response letter from BOP denying her claim, and this present Complaint is being filed within the six-month statute of limitations.[1]

6. Accordingly, Plaintiff has complied with all statutorily jurisdictional requirements and conditions precedent to commencement and prosecution of this litigation.

## PARTIES

7. Plaintiff July Justine Shelby (Ms. Shelby; she/her) is a natural person currently incarcerated within the custody of the United States, and was so incarcerated at all relevant times discussed below.

8. Defendant United States of America is sued for personal injuries to Plaintiff caused by the wrongful or negligent acts or omission of Defendants' agents or employees, who were acting within the scope of the office or employment under circumstances where the United States of America, if a private person, would be liable to Plaintiff in accordance with the laws of the State of New York. *See* 28 U.S.C. § 1346(b).

## FACTUAL ALLEGATIONS

9. Plaintiff has been in the custody of the Federal Bureau of Prisons since 2017.

### A. Background on Plaintiff.

10. Plaintiff is a transgender woman.

11. At birth, Plaintiff's assigned gender was male but her gender identity is female.

12. Plaintiff suffers from gender dysphoria.

---

[1] The denial inaccurately states that Plaintiff "makes no claim that she experienced a compensable loss as a result of negligence." This reading of the Form 95 is, at best, deliberately obtuse. *See, e.g.,* Form 95 at 9 (alleging Plaintiff was "raped through the deliberate **negligence** of FBOP actors and AICs in their custody and control") (emphasis added). Moreover, Plaintiff's counsel extensively attempted to negotiate the claim with a US Attorney in the relevant office, and the Government well understood the claims advanced here were on a negligence theory (even though the *pro se* drafted Form 95 *also* mentions the already judicially established — and binding here — constitutional violations by Defendant).

13. Among other places, this diagnosis has been made by medical and other professionals at the Eskenazi Women's Center for Excellence and Transgender Health ("Eskenazi"), in Indianapolis, Indiana and acknowledged by the Health Services staff at FCI Otisville.

14. Despite having full knowledge of Plaintiff's status as a transgender woman and her documented history of trauma, and as set out further below, BOP officials repeatedly housed her in male facilities where she was subjected to sexual assault, physical abuse, and harassment by staff and other prisoners.

15. Defendant's actions had extreme and serious consequences.

16. She was repeatedly raped.

17. Defendants negligently allowed that to happen in multiple time periods.

18. Those rapes caused serious damage to her body, such that the surgeon the United States approved to perform medically necessary gender affirming surgery have stated she is no longer a viable candidate for critical surgeries, though she appears to be a viable candidate for certain other surgeries.

19. Specifically, Plaintiff's understanding from the surgeon is that she is no longer able to have a vaginoplasty, though she would be able to have some form of orchiectomy.[2]

20. Plaintiff was first in Federal Custody in 2017 at FTC Oklahoma City, where she "notified BOP that she was a woman and requested to be treated accordingly." *JJS v W.S. Pliler*, 2022 US Dist LEXIS 146318, Slip Op. at *15 (SDNY Aug. 3, 2022), *report and rec. adopted* 2022 U.S. Dist. LEXIS 199132 (SDNY Nov. 1, 2022) ("*JJS*").

---

[2] Though the government initially approved and was moving forward with surgery, it went back on those discussions. Plaintiff's entitlement to those procedures is being litigated on the related habeas docket, in *JJS v. W.S. Pliler*, 19-cv-2020.

3

21. However, until a federal court intervened, despite the unconstitutionality of it — and explained below, the serious risks Defendant knew or should have known and ignored — Defendant housed Plaintiff in an all-male unit. *See generally, JJS.*

22. Background on Defendant's actions are set out in JJS, as well as in the Form 95. This complaint incorporates both by reference.[3]

23. Additionally, as set out in the Form 95, and while Shelby was at FCI Otisville, despite Judge Broderick's Order that Shelby not be moved or relocated in *JJS*, Warden Pliler declared "the Courts do not run my institution, I do."

24. Pliler then began a transfer to a facility outside of New York.

25. Plaintiff managed to notify her attorney once in the FTC in Oklahoma City, and the violation of the Court's order was stopped.

26. However, Warden Pliler not set out to violate this Court's orders, Plaintiff would have been at Otisville, not MDC, during the time described below.

**B. Defendant Knows of Risks and Houses Plaintiff with a Known Rapist.**

27. In late July 2022, this Court (Netburn, M.J.) held hearing on Plaintiff's habeas claims in *JJS*.

28. During that time, Plaintiff was being housed at MDC Brooklyn.[4]

29. Judge Netburn specifically asked the assigned AUSA, Dana Walsh Kumar, whether Plaintiff would be safe being housed with men, at MDC, while the case proceeded.

30. AUSA Kumar, having presumably consulted with BOP staff, said Plaintiff would be.

---

[3] With that said, and particularly given the response to the Form 95, Plaintiff clarifies that information from outside the statute of limitations is provided not as an independent cause of action but (1) as relevant background or (2) as, where relevant, part of ongoing harms or for negligence claims that either (a) did not accrue until later because of when harm took place or (b) were part of a concealed harm.
[4]

31. That was not true, and Defendant should have known it was not true.

32. On June 30, 2022, BOP staff moved Plaintiff onto a unit where she was housed with Shedrick Douglas Anderson, BOP Reg. No. 46679-044.

33. Upon information and belief, BOP knew that it planned that move at the time AUSA Kumar made the relevant representations to Judge Netburn.

34. In the habeas case, Defendant also filed declarations stating that BOP reviewed the history of any person assigned to share a cell with Plaintiff.

35. Anderson is a member, and is known by Defendant to be a member, of the prison gang "Vice Lords."

36. At the time, he had recently been convicted of holding a 20 year old cellmate at razor-point, forcing that cellmate to ingest drugs, and raping him.

37. Defendant knew of this history.

38. Upon information and belief, Defendant — if not aware before — became aware of this history of sexual misconduct in reviewing Anderson's history, as Defendant described the process to the habeas Court.

39. Plaintiff raised these issues with Anderson to MDC staff, particularly in light of her history of being the victim of sexual misconduct at Defendant's facilities.

40. MDC staff said he was a "good guy," and refused to do anything.

41. This was negligent.

42. Defendant knew, or should have known, that Anderson was a rapist likely to assault a cellmate.

43. Defendant knew, or should have known, that Plaintiff was particularly likely to be a victim because of Defendant's unconstitutional practice of housing her with men.

5

44. Defendant knew, or should have known, that transgender women in prison are sexually victimized at extreme rates, because of their transgender status.

45. Defendant knew, or should have known, that it was a virtual certainty that to house Plaintiff with Anderson would result in her being repeatedly raped and assaulted.

46. Defendant knew, or should have known, that because of the long history of rejecting Plaintiff's reporting of sexual abuse and refusing to act on it, that Anderson would be able to manipulate that inaction.

47. Defendant knew, or should have known, that because of the long history of rejecting Plaintiff's reporting of sexual abuse and refusing to act on it, that Plaintiff would not report Anderson.

### C. Defendant Negligently Allows Anderson to repeatedly Rape, Assault, and Drug Plaintiff for 75 Days.

48. Over the next 75 days, Anderson repeatedly assaulted and raped Plaintiff on a daily basis, following the pattern known to Defendant.

49. Anderson forced Plaintiff to ingest drugs.

50. Anderson beat her with his fist.

51. Anderson anally raped Plaintiff repeatedly.

52. Anderson forced Plaintiff to perform oral sex on him repeatedly.

53. Anderson also, with threats of further violence, made sure Plaintiff was unable to make any reports, including to her attorney or Judge Netburn.

54. This continued daily, with no intervention by Defendant, until September 9, 2022.

### D. Plaintiff is Moved out of the Cell with Anderson, and Defendant Blames Plaintiff.

55. After two and a half months of daily rapes, Defendant decided — seemingly and upon information and belief, for unrelated reasons — to move Plaintiff.

56. On September 9, 2022, Plaintiff's unit counselor told her to pack up, and that she was being moved.

57. Once off the unit housing Anderson, Plaintiff removed the N-95 mask she had been wearing to reveal her cut and swollen lip (cut and swollen from the abuse).

58. Plaintiff then reported the abuse detailed above.

59. On seeing the damage to Plaintiff's face, Unit Team staff called for an escort and moved Plaintiff to the MDC Lieutenant's office.

60. Instead of providing help, however, BOP staff berated Plaintiff for not helping herself.

61. She was initially berated for not defending herself.

62. Plaintiff showed a female corrections officer her ribs (covered in bruises).

63. The officer only photographed Plaintiff's face.

64. Plaintiff asked for medical attention.

65. The lieutenant ordered Shelby to be taken to the SHU and locked up, contrary to PREA rules.

66. The lieutenant told Plaintiff that she would be given medical attention once in the SHU.

67. Plaintiff was then placed in a cell immediately next door to Anderson.

68. For two days, he threated and verbally abused her.

69. Defendant then moved her to another cell.

   E. **Defendant Negligently Delays Medical Care.**

70. On the day that Shelby was placed in the SHU, the lieutenant said that Shelby would be seen by medical in the SHU.

71. However, Defendant delayed two weeks before allowing medical staff to evaluate Plaintiff injuries.

7

72. Plaintiff's visible injuries had mostly healed by this point.

73. Physical evidence from the rapes also was not collected in a "rape kit," because of the delay.

74. The nurse reported the PREA allegations, two weeks after the last incident.

75. The Lieutenant responsible for the complaint marked the complaint "unfounded."

76. Anderson was released from the SHU, without punishment.

77. Upon information and belief, that processing is consistent with a general neglect of prison sexual assault cases.

F. **Damages**

78. Plaintiff has since developed incontinence and lasting psychological trauma and is unlikely to fully recover.

79. Because of damage caused by the repeated rapes, Plaintiff is no longer physically capable of having a full vaginoplasty.

80. As more fully detailed in *JJS*, a vaginoplasty is medically necessary treatment for Plaintiff, and the inability to receive it causes immense, immeasurable harm.

81. Because of the rapes, Plaintiff now has non-curable sexually transmitted conditions, and still suffers from those with dramatic consequences.

**CLAIM FOR RELIEF:**
**NEGLIGENCE BY FEDERAL LAW ENFORCEMENT**
**UNDER THE FEDERAL TORT CLAIMS ACT**

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

83. BOP staff have a duty to ensure pretrial inmates' safety and security.

84. If not for the negligence described above, Plaintiff would not have been repeatedly raped, assaulted, and drugged.

85. If not for the negligence described above, Plaintiff would still be able to receive a vaginoplasty.

86. Allowing Plaintiff to be repeatedly raped, assaulted, and drugged, as detailed above, was a result of the negligence of Defendant's agents.

87. As a result of this that negligence, Ms. Shelby endured immense pain and suffering, and significant, permanent physical injury.

88. The United States is liable for these tortious acts under the Federal Tort Claims Act because they were committed by federal agents or employees who were acting within the scope of the office or employment, under circumstances where the United States of America, if a private person, would be liable to Plaintiff in accordance with the laws of the State of New York.

**WHEREFORE**, Plaintiff demands the following against Defendant:

    a.    Compensatory damages;
    b.    Costs, interest, and attorney's fees;
    c.    Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
       August 15, 2025

                                            **COHEN&GREEN P.L.L.C.**

                                            By: _____/s/_____
                                                  J. Remy Green

                                            1639 Centre Street, Suite 216
                                            Ridgewood (Queens), NY 11385
                                            t: (929) 888-9480
                                            f: (929) 888-9457
                                            e: remy@femmelaw.com